UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARY C. DILLON,                    :
                                   :CIVIL ACTION NO. 3:16-CV-28
            Plaintiff,             :
                                   :(JUDGE CONABOY)
            v.                     :
                                   :
CAROLYN W. COLVIN,                 :
Acting Commissioner of            :
Social Security.                   :
                                   :

_____

**MEMORANDUM**

Pending before the Court is Plaintiff's appeal from the
Commissioner's denial of Disability Insurance Benefits ("DIB")
under Title II of the Social Security Act.  (Doc. 1.)  She alleged
disability beginning on April 1, 2012.  (R. 32.)  The
Administrative Law Judge ("ALJ") who evaluated the claim, Geoffrey
Casher, concluded in his July 21, 2014, decision that Plaintiff's
severe impairment of a seizure disorder did not meet or equal the
listings.  (R. 13.)  He also found that Plaintiff had the residual
functional capacity ("RFC") to perform a full range of work at all
exertional levels with certain nonexertional limitations and that
she was capable of performing her past relevant work.  (R. 14-17.)
ALJ Casher therefore found Plaintiff was not disabled.  (R. 14.)

With this action, Plaintiff asserts that the Acting
Commissioner's decision should be reversed or remanded for the
following reasons: 1) the ALJ erred by substituting his own medical
opinions to determine the RFC and the medical opinions of record;
and 2) the ALJ erred in finding that Plaintiff was able to return

to her job as a Manager, Liquor Establishment.  (Doc. 15 at 3.)
After careful review of the record and the parties' filings, I
conclude this appeal is properly denied.

## I. Background

### A. *Procedural Background*

Plaintiff protectively filed for DIB on May 18, 2012.  (R.
11.)  The claim was initially denied on September 18, 2012, and
Plaintiff filed a request for a hearing before an ALJ on November
5, 2012.  (*Id.*)

ALJ Casher held a video hearing on December 5, 2013.  (*Id.*)
Plaintiff, who was represented by an attorney, testified as did
Plaintiff's husband, Dennis Dillon, and Vocational Expert ("VE")
Tim Mahler.  (*Id.*)  As noted above, the ALJ issued his unfavorable
decision on July 21, 2014, finding that Plaintiff was not disabled
under the Social Security Act during the relevant time period.  (R.
18.)

On September 2, 2014, Plaintiff filed a Request for Review
with the Appeals Council.  (R. 6-7.)  The Appeals Council denied
Plaintiff's request for review of the ALJ's decision on November
19, 2015.  (R. 1-5.)  In doing so, the ALJ's decision became the
decision of the Acting Commissioner.  (R. 1.)

On January 7, 2016, Plaintiff filed her action in this Court
appealing the Acting Commissioner's decision.  (Doc. 1.)  Defendant
filed her answer and the Social Security Administration transcript

on December 10, 2015.  (Docs. 9, 10.)  Plaintiff filed her
supporting brief on April 19, 2016.  (Doc. 15.)  Defendant filed
her brief on May 16, 2016.  (Doc. 12.)  Plaintiff did not file a
reply brief and the time for doing so has passed.  Therefore, this
matter is ripe for disposition.

**B.   *Factual Background***

Plaintiff was born on October 21, 1956.  (R. 134.)  Plaintiff
completed high school.  (*Id.*)  She has past relevant work as a club
manager.  (R. 17.)  In the Disability Report, Plaintiff listed
petit mal seizures as the condition that limited her ability to
work.  (R. 158.)

**1.   <u>Impairment Evidence</u>**

The following factual recitation is derived from the Statement
of Facts in Defendant's brief.[1]  (Doc. 16 at 1-4.)

> Dillon reported a history of seizures
> since 2007 (Tr. 244).  In February 2012, she
> reported experiencing up to three small
> seizures per day; these seizures did not last
> very long and were "more like she stare[d]
> off into space" (Tr 213). Scott McKimm, a

---

[1]  The Court adopts this Statement of Facts in that Defendant
provides a factual recitation with citations to the record where
Plaintiff's brief contains no background section and primarily
provides only generic references to exhibit numbers in the context
of arguments presented.  (*See* Doc. 15 at 5-8.)  Plaintiff did not
file a relpy brief and, therefore, has not disputed Defendant's
Statement of Facts.

In order to properly analyze Plaintiff's claimed errors, the
factual recitation set out in the text may be supplemented by
additional evidence of record in the Discussion section of this
Memorandum.

physician at Elk Regional Professional Group, changed Dillon's anticonvulsant medication from Depakote to Topamax (Tr. 217). The following month, Dillon reported only three seizures since the last visit and that they were "not as strong as they were" (Tr. 218).

On April 12, 2012, Dillon informed Dr. McKimm that she was doing "much better" (Tr. 224). She had three seizures since the last appointment, but "all occurred when she forgot to take her medication" (Tr. 224). A physical examination was normal. (Tr. 224).

Between May and December 2012, the administrative transcript contains no medical records from any physician.

On January 9, 2013, Dillon informed Dennis Parlavecchio, a physician at Elk Regional Professional Group, that she had "been feeling fine" and "denie[d] any complaints" (Tr. 233). Dr. Parlavecchio stated that Dillon "appeared annoyed that she had to come in for a check up to get meds refilled" (Tr. 233). Dillon had informed the nurse about experiencing "spells" of mini-seizures that lasted about a minute (Tr. 231), but denied this problem when asked about it by Dr. Parlavecchio (Tr. 233). Dillon informed Dr. Parlavecchio that these spells occurred only when she forgot to take her medication. (Tr. 233). A physical examination was normal (Tr. 234-235).

Between February and September 2013, the administrative transcript contains no medical records from any physician.

On October 21, 2013, Dillon visited Dr. Parlavecchio for a routine check up and to have him complete disability paperwork (Tr. 238). Dr. Parlavecchio's treatment record did not identify any specifics regarding Dillon's seizures (see Tr. 238-41). Dr. Parlavecchio opined that Dillon could perform a range of sedentary work (Tr. 242).

4

The administrative transcript contains
no further medical records from Elk Regional
Professional Group.

On April 11, 2014, Justine Magurno,
M.D., performed a consultative neurological
examination (Tr. 244-56).  A physical
examination showed a normal gait; normal
tandem walk; no difficulty walking on heels
and toes, rising from a chair, or getting on
and off the examination table; no
musculoskeletal or extremity abnormalities;
normal deep tendon reflexes; intact
sensation; normal strength in the arms and
legs; intact hand and finger dexterity; and
normal grip strength (Tr. 245-46).  Dr.
Magurno opined that Dillon could lift/carry
up to 20 pounds continuously; had no
limitations with walking, sitting, or
standing; had no limitations using the hands
or feet; and had some postural and
environmental limitations (Tr. 248-53).

(Doc. 16 at 1-4.)

2.   **ALJ Decision**

As noted above, ALJ Casher issued his decision on July 21,

2014.  (R. 11-18.)  He made the following Findings of Fact and

Conclusions of Law:

1.   The claimant meets the insured status
     requirements of the Social Security Act
     through December 31, 2016.

2.   The claimant has not engaged in
     substantial gainful activity since April
     1, 2012, the alleged onset date (20 CFR
     404.1571 *et seq.*)

3.   The claimant has the following severe
     impairment: a seizure disorder (20 CFR
     404.1520(c)).

4.   The claimant does not have an impairment
     or combination of impairments that meets

5

or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is unable to climb ladders/ropes/scaffolds; and she can have no exposure to unprotected heights and dangerous machinery.

6.   The claimant is capable of performing past relevant work as a club manager. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.   The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2012, through the date of this decision (20 CFR 404.1520(f).

(R. 13-17.)

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[2]   It is necessary for the

---

[2]   "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

only if his physical or mental impairment or impairments are of such severity that he is not

Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work.  20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity based on all the relevant medical evidence and other evidence in the case record.  20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process.  *Id.*

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate

only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

7

that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at step four of the sequential evaluation process when ALJ Casher determined that Plaintiff was capable of performing her past relevant work as a club manager. (R. 17.) He concluded that Plaintiff was able to do the job as actually performed and as generally performed. (*Id.*)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a
> talismanic or self-executing formula for
> adjudication; rather, our decisions make

8

> clear that determination of the existence *vel
> non* of substantial evidence is *not* merely a
> quantitative exercise.  A single piece of
> evidence will not satisfy the substantiality
> test if the Secretary ignores, or fails to
> resolve, a conflict created by countervailing
> evidence.  Nor is evidence substantial if it
> is overwhelmed by other evidence--
> particularly certain types of evidence (e.g.,
> that offered by treating physicians)--or if
> it really constitutes not evidence but mere
> conclusion.  *See* [*Cotter*, 642 F.2d] at 706
> ("'Substantial evidence' can only be
> considered as supporting evidence in
> relationship to all the other evidence in the
> record.") (footnote omitted).  The search for
> substantial evidence is thus a qualitative
> exercise without which our review of social
> security disability cases ceases to be merely
> deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary to analyze all evidence.  If she has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979).  In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court

can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated." *Hernandez v. Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .")). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where the ALJ's decision is explained in sufficient detail to allow meaningful judicial

review and the decision is supported by substantial evidence, a claimed error may be deemed harmless. *See*, *e.g.*, *Albury v. Commissioner of Social Security*, 116 F. App'x 328, 330 (3d Cir. 2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review."). An ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## IV. Discussion

As noted previously, Plaintiff asserts that the Acting Commissioner's decision should be reversed or remanded for the following reasons: 1) the ALJ erred by substituting his own medical opinions to determine the RFC and the medical opinions of record; and 2) the ALJ erred in finding that Plaintiff was able to return to her job as a Manager, Liquor Establishment.  (Doc. 15 at 3.)

### A.   *Residual Functional Capacity*

Plaintiff first contends the ALJ erred by improperly substituting his own medical opinion for the medical opinions of record, specifically asserting that he did not accord adequate weight to the treating physician's opinion which was supported by the independent medical examiner, family member statements, and other evidence, and the ALJ did not adequately explain his reasons for discounting this evidence. (Doc. 15 at 4-5.)  Defendant

11

maintains the ALJ properly evaluated the evidence related to Plaintiff's seizures.  (Doc. 16 at 5-12.)  I conclude Plaintiff has not shown that this claimed error is cause for reversal or remand.

Under applicable regulations and the law of the Third Circuit, a treating medical source's opinions are generally entitled to controlling weight, or at least substantial weight.  *See*, *e.g.*, *Fargnoli v. Halter*, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(c)(2); *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)).  Sometimes called the "treating physician rule," the principle is codified at 20 C.F.R. 404.1527(c)(2), and is widely accepted in the Third Circuit.  *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993); *see also Dorf v. Brown*, 794 F.2d 896 (3d Cir. 1986). The regulation addresses the weight to be given a treating source's opinion: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case, we will give it controlling weight."  20 C.F.R. § 404.1527(c)(2).[3]  "A cardinal principle

---

[3] 20 C.F.R. § 404.1527(c)(2) states in relevant part:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical

guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (citations omitted); see also *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 355 (3d Cir. 2008).  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225

---

evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

13

F.3d at 317 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988)).

The Court of Appeals for the Third Circuit addressed a plaintiff's argument that an ALJ failed to give controlling weight to the opinion of a treating physician in *Horst v. Commissioner of Social Security*, 551 F. App'x 41, 46 (3d Cir. 2014) (not precedential).

> "Under applicable regulations and the law of this Court, opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight." *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001). Controlling weight is given when a treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2). "Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence." *Fargnoli*, 247 F.3d at 43.

551 F. App'x at 46. *Horst* noted that neither the ALJ nor the court needed to rely on the treating physician's opinion that the plaintiff was completely disabled: "As an initial matter, 'the ALJ--not treating or examining physicians or State agency consultants--must make the ultimate disability and RFC determinations." 551 F. App'x at 46 n.7 (quoting *Chandler v. Comm'r of Social Sec.*, 667 F.3d 356, 361 (3d Cir. 2011); citing 20 C.F.R. § 404.1527(d)). Although it is true that an ALJ's credibility judgments alone cannot override a treating physician's

14

medical opinion that is supported by the evidence, *Morales v. Apfel*, 225 F.3d 310, 310 (3d Cir. 2003), where an ALJ relies "upon more than personal observations and credibility determinations in discounting the treating physician's finding of disability," the ALJ does not run afoul of relevant law. *Drejka v. Commissioner of Social Security*, 61 F. App'x 778, 782 (3d Cir. 2003) (not precedential) (distinguishing *Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2000) (holding that an ALJ's credibility judgments alone cannot override a treating physician's medical opinion that is supported by the evidence)). *Drejka* also noted that where the treating physician made the determination the plaintiff was disabled only in a form report, the Third Circuit Court has characterized a report, "in which the physician's only obligation was to fill in the blanks, as 'weak evidence at best.'"   61 F. App'x at 782 (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)).

The ALJ afforded little weight to Dr. Parlavecchio's opinion that Plaintiff was limited to a reduced range of sedentary work because "the opinion is inconsistent with the medical evidence of record, in that there are no objective findings that would support physical limitations with respect to lifting/carrying due to claimant's seizures." (R. 16.)  Dr. Parlavecchio had concluded that Plaintiff could occasionally lift up to ten pounds, occasionally carry six to ten pounds, and never lift or carry more

than ten pounds.  (R. 230, 242.)

    ALJ Casher gave partial weight to the opinion of Dr. Magurno, the consulting examiner, that Plaintiff was limited to a reduced range of light work.  (R. 17.)  The ALJ concluded the limitations regarding work near unprotected heights and dangerous machinery were appropriate given Plaintiff's seizure disorder, but found that Dr. Magurno's exertional limitations were not supported by the medical evidence of record, specifically noting that Plaintiff "had normal findings with respect to fine motor/ grip strength, muculoskeletal testing, and extremity testing."  (R. 17 (citing Ex. 4F [Doc. 14-1 at 243-56]).)  Dr. Magurno had concluded that Plaintiff could never lift or carry over twenty pounds.  (R. 248.)

    Plaintiff states the ALJ did not provide adequate reasons for rejecting Dr. Parlavecchio's opinion, "particularly in light of the fact that it was substantially corroborated by the Independent Medical Evaluator and the statements and testimony offered at the hearing in this case."  (Doc. 15 at 5.)  She points to Dr. Magurno's opinion, stating that Dr. Parlavecchio's opinion is "substantially supported" by Dr. Magurno's opinion.  (*Id.*) Plaintiff reiterates Dr. Magurno's limitations, characterizeing them as "very well reasoned," and points to testimony from Plaintiff and her husband and third-party statements as further support for Dr. Parlevecchio's opinion.  (*Id.*)

    Defendant responds that the ALJ's evaluation of Plaintiff's

16

seizures comports with SSR 87-6 which explains that seizures are rarely disabling because medical advances allowed physicians to control seizures and noncompliance with treatment was the main reason seizures were not controlled.  (Doc. 16 at 6, 8 (citing SSR 87-6, 1987 WL 109184).)  Defendant provides a lengthy analysis of the propriety of the ALJ's RFC determination based on the evidence of record, including the minimal treatment, the effectiveness of medication, Plaintiff's testimony about her activities of daily living, and her part-time work activity.  (Doc. 16 at 8-10.) Defendant also counters Plaintiff's assertions regarding the ALJ's analysis of the medical opinions of record.  (*Id.* at 10-11.)

Extensive discussion of this claimed error is not warranted in that Plaintiff's loosely drafted argument does nothing to refute ALJ Casher's conclusion that Dr. Parlavecchio's "opinion is inconsistent with the medical evidence of record, in that there are no objective findings that would support physical limitations with respect to lifting/carrying due to claimant's seizures" (R. 16). Plaintiff's criticism of the ALJ's consideration of Dr. Parlavecchio's opinion is based solely on her general assertion that it was supported by other evidence, most notably Dr. Magurno's "very well reasoned" opinion.  (Doc. 15 at 5.)  Importantly, Plaintiff does not point to medical evidence of record supporting the exertional limitations found by Dr. Magurno or otherwise explain why Dr. Magurno's opinion is "very well reasoned."  In

17

essence, Plaintiff would like the Court to adopt the position that *unsupported* findings in the examining physician's opinion are adequate to support unsupported findings in the treating physician's opinion--a proposition at odds with the legal framework set out above.  In sum, Plaintiff's conclusory assertions do not undermine the ALJ's criticism of either Dr. Magurno's opinion or Dr. Parlavecchio's opinion.[4]  Plaintiff provides no basis to conclude that ALJ Casher erred in discounting the unsupported limitations set out in Dr. Parlavecchio's opinion, nor does Plaintiff provide a basis to conclude the ALJ's explanation for the weight assigned the opinion is inadequate.  Thus, Plaintiff has not shown that this claimed error is cause for reversal or remand.

**B.   Step Four**

Plaintiff maintains the ALJ erred at step four when he found she was able to return to her past work as a club manager when in fact Plaintiff performed her job at a higher lifting level than the DOT no. 187.167-126 Manager, Liquor Establishment position, her job required her to climb ladders on occasion, exposed her to unprotected heights and dangerous machinery, and required her to

---

[4]  Plaintiff's general references to "substantial testimony" provided by Plaintiff and her husband, and third party statements (Doc. 15 at 5) provide no support for her argument that the ALJ erred on the basis alleged.  Plaintiff's reference to evidence allegedly found ineligible by the ALJ (*id.* (citing Exhibit 2F)) does nothing to advance her position both because of the conclusory nature of the assertion and because the referenced exhibit is identical to evidence of record considered by the ALJ (R. 16, 230, 242).

drive automobiles.  (Doc. 15 at 6-8.)  Defendant asserts that the ALJ properly found that Plaintiff could perform her past relevant work as generally performed in the national economy.  (Doc. 16 at 12.)  I conclude Plaintiff has not shown the ALJ erred in concluding Plaintiff could perform her past relevant work as generally performed and, therefore, this claimed error is not cause for reversal or remand.

In her supporting brief, Plaintiff points to many reasons the ALJ improperly concluded she could perform her past relevant work as actually performed.  (Doc. 15 at 6-8.)  Though she makes reference to the job as generally performed (*id.* at 6-7), she makes no specific argument that the ALJ erred in finding that she could perform the job on this basis.[5]

Defendant points to the ALJ's alternative findings--that Plaintiff could do the job as actually performed and as generally performed--and asserts that substantial evidence supports the VE's testimony that Plaintiff could perform her past relevant work as generally performed.  (Doc. 16 at 13-14 (citing R. 17, 39).)  Defendant states that even if Plaintiff "were correct that she could not perform her past relevant work as she performed it, any error would be harmless because the ALJ properly found that she

_____

[5]  To the extent Plaintiff's argument could be viewed as a challenge to the RFC, Defendant's analysis of this possible argument is supported by the record and consistent with the Court's analysis in the RFC section of the Memorandum.  (See Doc. 16 at 14-15.)

also could perform her past relevant work as generally performed."
(*Id.* at 16 (citing *Garibay v. Comm'r of Soc. Sec.*, 336 F. App'x
152, 159-60 (3d Cir. 2009) (the ALJ's step four finding that the
claimant could perform her past relevant work as actually performed
was harmless because substantial evidence still supported the ALJ's
step four finding that the claimant could perform past relevant
work as generally performed)).)   Plaintiff did not file a reply
brief and thus did not refute Defendant's argument that the claimed
step four error should be deemed harmless.   Because Plaintiff has
not shown that ALJ Casher erred in concluding Plaintiff could
perform the position as generally performed, Plaintiff's claimed
error is not cause for reversal or remand.[6]

### V. Conclusion

For the reasons discussed above, the Court concludes
Plaintiff's appeal of the Acting Commissioner's decision is

---

[6] In the step four section of her brief, Plaintiff also notes
that the ALJ erred in finding she was working because her
dishwashing job was part time and did not rise to the level of
substantial gainful activity.  (Doc. 15 at 8.)  Plaintiff does not
develop this argument.  Because the ALJ found that Plaintiff had
not engaged in substantial gainful activity since April 1, 2012,
the Court finds no error in the ALJ's factual statement that
Plaintiff was working (R. 13, 16).

Further, as noted by Defendant in the context of the ALJ's RFC
analysis, the ALJ's reference to Plaintiff's part-time work was
appropriate in that it was probative evidence that her seizures did
not preclude work activity.  (Doc. 16 at 9 (citing *McGraw v. Comm'r
of Soc. Sec.*, 609 F. App'x 113, 115 (3d Cir. 2015); *Myers v.
Barnhart*, 57 F. App'x 990, 997 (3d Cir. 2003)).)

properly denied.  An appropriate Order is filed simultaneously with this Memorandum.


S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: June 10, 2016